# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| THOROUGHBRED VENTURES, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00318 |
| | § | Judge Mazzant |
| MICHAEL DEXTER DISMAN, CHRIS | § | |
| D'ADDARIO, NAOMI D'ADDARIO, and | § | |
| NM EXPLORATIONS, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Supplemental Brief in Support of Its Motion for Preliminary Injunction (Dkt. #38) and Defendants' Emergency Motion for Reconsideration and to Dissolve Temporary Restraining Orders (Dkt. #27). After reviewing the relevant pleading, motions, and evidence received at the hearing, the Court finds that Plaintiff's motion for preliminary injunction (Dkt. #38) should be denied, and Defendants' motion should be denied as moot.

## BACKGROUND

In 2015, Plaintiff Thoroughbred Ventures, LLC ("Thoroughbred"), through its owner Trenton Davis ("Davis"), hired Defendant Michael Dexter Disman ("Disman") as a manager and/or partner of Thoroughbred. Thoroughbred alleges that during Disman's employment, Disman signed an Employment and Confidentiality Agreement (the "Employment Agreement"), which provided that all client contact and background information belonged to Thoroughbred and constituted "Confidential Information" and a trade secret of Thoroughbred. Despite the alleged contract, Thoroughbred complains that Disman, along with the other Defendants, conspired to create a separate investment group, 547 Land Development ("547 Land"), using Thoroughbred's

confidential and trade secret protected information.[1]  Moreover, Thoroughbred avers that Defendants raised more than $2.3 million from Thoroughbred investors in pursuit of their alleged illegal endeavor.

As a result, on April 30, 2018, Thoroughbred filed suit against Defendants alleging misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and conspiracy (Dkt. #1).  That same day, Thoroughbred filed an *ex parte* sealed application for the seizure of Thoroughbred's Gray Hewlett Packard Laptop (the "HP Laptop") in the possession of Disman, pursuant to 18 U.S.C. § 1836, which allegedly contains Thoroughbred's trade secrets, and for a temporary restraining order ("TRO") and preliminary injunction (Dkt. #3).  On May 1, 2018, the Court granted Thoroughbred's motion, issued the TRO, ordered the U.S. Marshals Service to seize the HP Laptop, and set a hearing for May 8, 2016, for Disman to respond to the seizure as required by 18 U.S.C. § 1836(b)(2)(B)(v) (Dkt. #6; Dkt. #7).

On May 8, 2018, the Court held a hearing regarding Thoroughbred's seizure of the HP Laptop and to discuss Plaintiff's TRO and application for preliminary injunction.  No Defendant appeared at the hearing.  During the hearing, counsel for Plaintiff, Decker Cammack ("Cammack"), explained to the Court that the Northern District of Texas U.S. Marshals Service made contact with and served Disman with papers and attempted to seize the HP Laptop.  However, once confronted, Disman represented that he did not possess the HP Laptop; rather, the requested laptop was located in a certain drawer of a particular desk in Thoroughbred's office in McKinney, Texas.  Based on this information, the Marshals Service went to Thoroughbred's office to search for the laptop in the described drawer.  Although the drawer contained a laptop, the laptop

---

[1] Disman and Defendant Christopher D'Addario ("D'Addario") are partial owners of 547 Land.  There is no evidence that Defendants Naomi D'Addario or NM Explorations, LLC, are engaged in this business.

did not match the description of the HP Laptop. To date, the specific HP Laptop has not been found.

The Court set the case for a full evidentiary preliminary injunction hearing for May 21, 2018, and extended the TRO until May 22, 2018 (Dkt. #14; Dkt. #15).

On May 9, 2018, Thoroughbred filed a Motion for Forensic Examination of Electronic Devices Pursuant to FED. R. CIV. P. 65 (Dkt. #23). The Court granted Thoroughbred's motion on May 16, 2018, and required Defendants to submit their electronic devices for imaging and subsequent forensic analysis, which included all devices Defendants have been authorized to use, have access to use, or have simply used, regardless of actual ownership (Dkt. #25). On May 21, 2018, Defendants filed an emergency motion for reconsideration and to dissolve the TROs (Dkt. #27).

The preliminary injunction hearing was held on May 21, 2018, and continued on May 30, 2018, and June 1, 2018 (Dkt. #30; Dkt. #32). On June 20, 2018, Thoroughbred filed a Supplemental Brief in Support of its Motion for Preliminary Injunction (Dkt. #38). On July 6, 2018, Defendants filed a response (Dkt. #42). On July 13, 2018, Thoroughbred filed a reply (Dkt. #48).

**LEGAL STANDARD**

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden

of persuasion on all four requirements." *Id.* Nevertheless, a movant "'is not required to prove its case in full at a preliminary injunction hearing.'" *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

To prevail on its motion for preliminary injunction, Thoroughbred must demonstrate a substantial likelihood of success on the merits. This requires Thoroughbred to present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey*, 647 F.3d at 595–96). A prima face case does not mean Thoroughbred must prove it is entitled to summary judgment. *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). The Court finds that Thoroughbred has not demonstrated a substantial likelihood of success on both of its claims for breach of contract and misappropriation of trade secrets.

**A. Breach of Contract**

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley,* 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.).

The Court finds its unnecessary to address Defendants' arguments regarding whether Disman was an independent contractor rather than an employee, or whether there is a valid enforceable contract between the parties, because the Court finds that Thoroughbred has not presented sufficient evidence to satisfy the third element—breach of the alleged contract.

The Employment Agreement contains the following clauses prohibiting disclosure, use, copying, and removal of Thoroughbred's trade secrets and confidential information:

**6. <u>Confidential Information, Trade Secrets, & Goodwill.</u>**

    i. Employee hereby acknowledges and agrees that Employer has Confidential Information and Trade Secrets that belongs to the Employer and to third parties, including but not limited to customers and customer prospects who have furnished such information and materials to the Employer and/or the Employee, who are under obligations of confidentiality and non-disclosure.

. . . .

    vi. Confidential Information and Trade Secrets may not be duplicated or removed from Employer's premises by Employee without the prior written consent of Employer and in accordance with the policies and procedures established by the Employer. If removed from such premises by consent, such Confidential Information and Trade Secrets shall be returned upon the terms outlined in the written consent or Employer established policies and procedures.

. . . .

**7. <u>Covenant Not to Solicit and Other Post-Employment Obligations.</u>**

    i. ***<u>Covenant not to Solicit.</u>*** Employee agrees that during his/her employment with Employer, and for a period of twenty-four (24) months following the termination of Employee's employment with Employer, regardless of who terminates the employment relationship and regardless if terminated with or without cause, ***Employee will not either directly or indirectly or through one or more intermediaries, solicit, call on, consult, service, or offer to any Covered Person a Restricted Product anywhere in the United States***. "Covered Person" is a Person or their agent(s): (i) who was contacted, called on, solicited, serviced, or otherwise dealt with by the Employee, as a part of Employee's employment; (ii) who was contacted, called on, serviced, solicited, or otherwise dealt with persons supervised by Employee, as a part of Employee's employment; (iii) whose name or Confidential Information was known by the Employee, heard by, or used by any other employee in making solicitation; or (iv) whose Confidential Information the Employee had accessed during his/her employment. ***"Restricted Product" means any product or investment that Employee, as a part of his/her employment: (i) had offered, sold, or received training or communications about***; or (ii) had received or had access to Confidential Information about such product or investment.

5

(Dkt. #39, Exhibit 1 at pp. 3–5) (emphasis added). The Employment Agreement also contains the following definitions:

> "Confidential Information" means any and all confidential, proprietary or Trade Secret information, whether disclosed to Employee, directly or indirectly, verbally, in writing or by any other means in tangible or intangible form applicable to or in any way related to: (i) investors (also referred to as "Client(s)") with whom the Employer has a relationship; (li) non-public personal information about the Employer's Clients and prospective Clients; (iii) all customer and prospective Client information; (iv) prospective Clients of the Employer; (v) business, financial, and profit information about the Employer and the Employer and their respective products, services, business practices, strategies, results, and relationships, including but not limited to information about any drillers and operators with which Employer has relationships, and any and all geological information Employer uses in the course of its business; (vi) business and financial information about employees of Employer and the Employer; or (vii) the present or future business plans of Employer or the Employer. Without limiting the generality of the foregoing and by way of example, Confidential Information may be accessed via computer systems directly or remotely for databases maintained by the Employer and includes anyone or more of the following information: well information, well logs, . . . ***Client and prospective Client lists***, marketing methods, . . . business plan and projections, price charged to customers and priced charged by vendors; profit margins, tax returns, technical and training information, handbooks, manuals, and software, specialized forms, computer programs, or any other Confidential Information of, about, or concerning the business of Employer or the Employer. . . .
>
> "Trade Secret" shall mean Employer's information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, geological and geophysical information, (including well logs, geological analysis and seismic information), performance history of oil and gas investment programs or ***list of actual or potential customers, Clients, investors or suppliers*** service providers, specifically including information about an investor's name, address, telephone number, identifiers, investment history, investment performance history risk tolerance and liquidity and Confidential Information.

(Dkt. #39, Exhibit 1 at pp. 1–2) (emphasis added).

Thoroughbred "has not brought a claim for breach of a non-compete covenant" but claims Defendant breached the non-disclosure and/or non-solicitation agreement (Dkt. #48 at p. 2). "[N]on-disclosure covenants do not restrain trade and competition in the same way that non-solicitation covenants restrain trade and competition. As a result, § 15.50 [of the Texas

6

Business & Commerce Code] does not govern or impair the enforceability of non-disclosure covenants." *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 465 (5th Cir. 2003) (citing *CRC–Evans Pipeline Intern., Inc. v. Myers,* 927 S.W.2d 259 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654 (Tex. App.—Dallas 1992, no writ)); *see* TEX. BUS. & COMM. CODE ANN. § 15.50. "Accordingly, they are not subject to the stringent requirements that Texas law places upon noncompetition agreements." *Oxford Glob. Res., Inc. v. Weekley-Cessnun*, No. CIV.A. 3:04-CV-0330, 2005 WL 350580, at *2 (N.D. Tex. Feb. 8, 2005). However, "[i]f a nondisclosure covenant[] has the practical effect of 'prohibit[ing] the former employee from using, *in competition with the former employer,* the *general* knowledge, skill, and experience acquired in former employment,' then it is more properly characterized as a noncompetition agreement." *Id*. (quoting *ZEP Manufacturing Co. v. Harthcock,* 824 S.W.2d 654, 663 (Tex. App.—Houston [1st Dist.] 1988, no writ) (emphasis in original)).

Thoroughbred is not entitled to an injunction prohibiting the Defendants from using or disclosing contact information or other confidential information to the extent it is committed to memory.

> In the employment context presently under consideration, the Court considers the network of acquaintances one comes to know through employment to be an aspect of the "general knowledge . . . and experience acquired in former employment" that one could utilize in competition with one's former employer. An agreement prohibiting a former employee in this field from disclosing his acquaintances would therefore be a noncompetition agreement in disguise, and would be unenforceable as such. Some of the other categories of confidential information-for example, financial information-might present different problems, but the present motion does not accuse the Former Employees of disclosing anything other than information related to Clients and Contractors.

*Oxford*, 2005 WL 350580, at *2 (footnote omitted). Accordingly, Thoroughbred is not entitled to an injunction with respect to disclosure of information committed to memory.

The situation may be different with respect to tangible documents or computer files produced by Thoroughbred because such documents do not constitute general knowledge and experience. However, Thoroughbred has not presented evidence that Defendants took steps to remove such files from Thoroughbred's premises or are in possession of such files to support Thoroughbred's characterization of its confidential information, including client and customer lists, as proprietary and difficult to duplicate.[2] To the contrary, the only evidence presented during the hearing of Disman using information related to the identity and contact information for Thoroughbred's prior investors related to investors whom Disman previously knew and conducted business with before his employment with Thoroughbred, or investors who were brought into 547 Land by people other than Disman (Dkt. #42 at pp. 12–14).

Lastly, regarding the non-solicitation agreement, the Court does not find that Thoroughbred is likely to prevail in proving that Disman's communications with Thoroughbred investors related to a "Restricted Product" as prohibited by the non-solicitation clause. (Dkt. #39, Exhibit 1 at ¶ 7(i)). A communication between Disman and D'Addario, regarding D'Addario's residential real estate business venture is not likely to be considered a communication that Disman received "as part of his/her employment" related to Thoroughbred's oil and gas field. Even if the Court were to find a likelihood of success on Thoroughbred's breach of the non-solicitation provision, there is no likelihood of imminent irreparable harm because the evidence suggests that the 547 Land project is fully funded and is currently not seeking any additional investments. In other words, any harm can be remedied by monetary damages. As such, Thoroughbred is not entitled to an injunction based on its breach of contract claim(s).

---

[2] Although Thoroughbred alleges that Disman possesses the HP Laptop, which allegedly contains Thoroughbred's confidential information and trade secrets, Disman contends he does not possess it and the U.S. Marshall's did not retrieve the laptop when ordered to seize it.

**B. Misappropriation of Trade Secrets**

A claim for misappropriation of trade secrets requires: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836(b)(1). A trade secret[3] includes all business information, including compilations, if the owner has taken reasonable measures to keep such information secret, that derives independent economic value from not being generally known to and not being readily ascertainable by another person who can obtain economic value from the disclosure or use of the information. *Id.* § 1839(3). Misappropriation is satisfied if disclosure of the trade secret is made, without consent, by a person who acquired the knowledge under circumstances giving rise to a duty to maintain its secrecy. *Id.* § 1839(5). "Improper means" includes breach of a duty to maintain secrecy, but does not include reverse engineering or independent derivation. *Id.* § 1839(6).

A trade secret includes compilations of data that the owner has taken steps to keep secret and that derive independent economic value. Thoroughbred argues it has trade secret information in the form of its client and investor lists that have been created and compiled by their partners, during their employment with Thoroughbred.

Customer and client lists can be trade secrets; however, where the names and addresses of customers and clients on a party's customer or client list are "readily ascertainable," the list is not

---

[3] Texas has adopted the Texas Uniform Trade Secrets Act ("TUTSA"), which has similar elements to the federal act. Under the TUTSA, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6). Misappropriation and improper means have the same definitions under the federal and Texas acts. *Compare* 18 U.S.C. § 1839(5) *with* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(3).

protectable as a trade secret. *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 916 (S.D. Tex. 2015). As stated above, there was no evidence presented at the hearing that Disman took or is working from a tangible list or compilation of customer or client information. Rather, Thoroughbred's argument is that the names of its customer and client contacts qualify as trade secrets because Disman learned this information by virtue of his employment with Thoroughbred. (Dkt. #38 at pp. 5–8).[4]

Thoroughbred concedes that contacts for individual clients or customers may be readily identifiable through the internet, or "lead lists", but argue that these names are nevertheless entitled to trade secret protection once they become "client lists" because the general public does not know the specific investor and the projects that specific investor has already invested in. (Dkt. #38 at pp. 5–8). This argument runs contrary to a basic premise of trade secret law: to be protectable, information must be *secret. See Tewari De–Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 611 (5th Cir. 2011) ("It is self-evident that the subject matter of a trade secret must be secret.").

The fact that Disman may have learned this information, including his introduction to Di'Addario, by virtue of his position at Thoroughbred, or that it might take longer for a member of the general public to discover it does not render non-secret identities and contact information a secret. Employees can become aware of or learn all sorts of information through their employer, but unless the employer protects and treats the information as secret, it is not protected against disclosure. To be "secret," information must be "neither generally known by others in the same business nor readily ascertainable by an independent investigation." *A.M. Castle*,

---

[4] The Court notes that as a preliminary matter, Disman knew investors Alan Galson and Brandon Duncan and had their contact information prior to working for Thoroughbred, so Thoroughbred's assertion is factually incorrect, at least with regard to these two investors.

123 F. Supp. 3d at 915. Accordingly, "names of customers ascertainable through public sources will not be protected as trade secrets." *Panther Sys. II, Ltd. v. Panther Comput. Sys., Inc.*, 783 F. Supp. 53, 67 (E.D.N.Y. 1991). At the preliminary injunction hearing Davis testified to the following:

> Q: You paid them to have relationships. You just testified –
>
> A: Yes, sir. That's -- that's what my company does for my brokers. They all have relationships with their investors.
>
> Q: *And your position is that Thoroughbred owns those relationships, right*?
>
> A: *Absolutely*. They are my investors to begin with. Without Thoroughbred, you would have never known who the investors were. *So whether they are public or not, it's null and void*. If you didn't know who Brandon Duncan was, then you wouldn't even know who to look up with LinkedIn. It's just a bunch of names and numbers in your book.

(Dkt. #33 at pp. 102:22–103:9) (emphasis added).

"Customer relationships do not qualify as trade secrets just because a company invests time and money to cultivate those relationships." *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *15 (W.D. Tex. Sept. 5, 2017) (citing *Aerosonic Corp. v. Trodyne Corp.*, 402 F.2d 223, 230 (5th Cir. 1968) (noting that an "advantageous business relationship" between an employer and its customer is not a trade secret)). "This is the very reason why many employers insist upon non-compete agreements: to protect their goodwill and to prohibit former employees (for a reasonable period of time) from being able to take advantage of that time and investment to their detriment." *Id*. Thoroughbred cannot rely on DTSA or TUTSA to protect the relationships because the DTSA and TUTSA protects an employer's secrets, not its relationships. As such, the Court finds that Thoroughbred has not established a substantial likelihood of success on its misappropriation of trade secrets claim. Thoroughbred is not entitled to an injunction based on its misappropriation of trade secrets claim.

Accordingly, because the Court finds Thoroughbred failed satisfy the first element required to issue a preliminary injunction—a substantial likelihood of success on the merits—for either its breach of contract claim(s) or misappropriation of trade secrets claim,[5] it is unnecessary to address the remaining preliminary injunction elements. Further, because the Court denies Thoroughbred's motion for preliminary injunction and the previously issued TROs are dissolved, Defendants' motion is denied as moot.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Supplemental Brief in Support of Its Motion for Preliminary Injunction (Dkt. #38) is **DENIED** and Defendants' Emergency Motion for Reconsideration and to Dissolve Temporary Restraining Orders (Dkt. #27) is **DENIED as moot**.

**SIGNED** this 8th day of August, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[5] Although the evidence presented at the hearing is insufficient to warrant a preliminary injunction, future discovery could reveal evidence that could alter the result.