# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THOROUGHBRED VENTURES, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00318 |
| | § | Judge Mazzant |
| MICHAEL DEXTER DISMAN, CHRIS | § | |
| D'ADDARIO, NAOMI D'ADDARIO, and | § | |
| NM EXPLORATIONS, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Michael Disman's Rule 12 Motion to Dismiss and for More Definite Statement (Dkt. #46) and Defendants Christopher D'Addario, Naomi D'Addario, and NM Explorations, LLC's (collectively, "D'Addario Defendants") Rule 12 Motion to Dismiss and for More Definite Statement (Dkt. #47). Having considered the motions and the relevant pleadings, the Court finds that both motions should be denied.

## BACKGROUND

Thoroughbred is an investment business that aggregates money from investors to fund investments in oil and natural gas production as well as real estate. In December 2015, Thoroughbred hired Disman as a salesman in its investment business. When Thoroughbred hired Disman in 2014, and again in 2015 and 2018, Disman signed substantially similar employment and confidentiality agreements (collectively, "the Agreements") with Thoroughbred in which he agreed to devote his exclusive and sole efforts to Thoroughbred's business and, if terminated, would immediately return all confidential information and trade secrets in his possession to Thoroughbred. In March 2015, Thoroughbred promoted Disman to a "manager/partner."

During his employment with Thoroughbred, Trent Davis—Thoroughbred's principal—personally purchased a laptop computer for Disman to use as a Thoroughbred employee.

Disman used the laptop while engaged in Thoroughbred's business and the laptop allegedly contains Thoroughbred's confidential information and trade secrets.

Thoroughbred claims that during Disman's employment, without the knowledge and consent of Thoroughbred, Disman solicited more than 2.3 million dollars from Thoroughbred's investors for a real-estate deal. Thoroughbred alleges Disman orchestrated this deal with the help of the D'Addario Defendants and one or more of Disman's companies—including 547 Land Development. Due to this conduct, Thoroughbred terminated Disman. However, Disman did not return the laptop containing Thoroughbred's confidential information and trade secrets to Thoroughbred.

Thoroughbred filed suit against Disman and the D'Addario Defendants on April 30, 2018 (Dkt. #1). On June 28, 2018, Thoroughbred filed its Amended Complaint (Dkt. #39). On July 12, 2018, Disman and the D'Addario Defendants filed the motions at issue (Dkt. #46; Dkt. #47). Thoroughbred filed a joint response to the motions on July 26, 2018 (Dkt. #54). On July 27, 2018, the D'Addario Defendants filed a reply in support of their motion (Dkt. #55). On August 2, 2018, Disman filed a reply in support of his motion (Dkt. #61).

On February 20, 2019, the Court dismissed the D'Addario Defendants pursuant to Thoroughbred's Notice of Voluntary Dismissal (Dkt. #90; Dkt. #91). Thoroughbred's remaining claims against Disman include: (1) misappropriation of trade secrets under 18 U.S.C. § 1836 and Chapter 134A of the Texas Civil Practice and Remedies Code; (2) breach of contract; (3) conspiracy; and (4) breach of fiduciary duty (Dkt. #39).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*,

556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The Court first addresses the D'Addario Defendants' motion (Dkt. #47). The Court previously dismissed the D'Addario Defendants from this case pursuant to Thoroughbred's Notice of Voluntary Dismissal (Dkt. #90; Dkt. #91). Therefore, the Court **DENIES** the D'Addario Defendants' Rule 12 Motion to Dismiss and for More Definite Statement as **MOOT** (Dkt. #47).

Addressing Disman's motion, Disman moves to dismiss Thoroughbred's breach of contract, trade secret, conspiracy, and fiduciary duty claims and, alternatively, requests the Court order Thoroughbred to replead its trade secrets (Dkt. #46). The Court addresses each argument in turn.

### I. Breach of Contract

Disman first argues Thoroughbred's breach of contract claim should be dismissed because the Agreements are unenforceable as the parties failed to achieve a meeting of the minds

and Thoroughbred fails to adequately allege a breach of the Agreements' exclusivity clause (Dkt. #46 at pp. 3–8).

### A. Indefiniteness

Disman contends the Agreements are entirely unenforceable as a matter of law because the parties did not achieve a meeting of the minds on a material term of the Agreements (Dkt. #47 at pp. 3–7). Specifically, Disman alleges the parties failed to specify Disman's compensation in the Agreements. Although Disman's compensation is not relevant to this lawsuit, Disman creatively seeks to invalidate the Agreements through the compensation issue in order to avoid other provisions of the Agreements, such as the confidentiality, non-disclosure, and exclusivity provisions.

"A meeting of the minds is necessary to form a binding contract." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied)). "Essential" or "material" terms to a contract are those "'that parties would reasonably regard as vitally important elements of their bargain.'" *Heartland Holdings, Inc. v. U.S. Tr. Co. of Tex. N.A.*, 316 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *Potcinske*, 245 S.W.3d at 531). "Whether a term is an essential element of a contract depends primarily upon the intent of the parties." *Burrus v. Reyes*, 516 S.W.3d 170, 187 (Tex. App.—El Paso 2017, pet. denied) (citing *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi 2013, no pet.)). "When essential terms are missing from the parties' agreement, the parties have, at most, only entered into an agreement

to make a future agreement, with the essential terms left open to future negotiations, which, in turn, cannot constitute a binding contract." *Id.* at 186 (citing *Southern v. Goetting*, 353 S.W.3d 295, 299–301 (Tex. App.—El Paso 2011, pet. denied)); *see also McCulley Fine Arts Gallery, Inc. v. X Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ) (citing *Bank of El Paso v. T.O. Stanley Boot Co. Inc.*, 809 S.W.2d 279, 285 (Tex. App.—El Paso 1991, affirmed as modified)). "The material terms of a contract are determined on a case-by-case basis, with each contract considered separately." *Id.* (citing *Fischer*, 479 S.W.3d at 237 (Tex. 2016)). Before submitting a contract issue to the jury, the trial court must determine, as a matter of law, whether all essential terms have been included in the contract. *Burrus*, 516 S.W.3d at 186 (citations omitted); *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664–65 (Tex. App.—Dallas 2004, pet. denied) ("Whether an agreement fails for indefiniteness is a question of law to be determined by the court.").

Both the 2015 and 2018 agreements state that Thoroughbred "shall compensate" Disman "as provided in Schedule '1' which is attached to this Agreement and imported herein." (Dkt. #39-1 at p. 2; Dkt. #39-2 at p. 2). Oddly, Schedule 1 provides only the following:

### SCHEDULE "1"

**Compensation**

(Dkt. #39-1 at p. 12; Dkt. #39-2 at p. 12). The 2014 agreement also does not specify Disman's compensation (Dkt. #39-17 at pp. 1–8). Citing the parties' failure to state Disman's compensation in the Agreements, Disman argues the Agreements are unenforceable as a matter of law because the parties failed to achieve a meeting of the minds on the material term of compensation that Thoroughbred was required to pay Disman. (Dkt. #46 at p. 3).

The Court does not believe the parties' failure to state Disman's compensation renders the Agreements indefinite and unenforceable for two reasons. First, an agreement is not necessarily rendered unenforceable simply because "the compensation is not spelled out." *Cent. Petroleum Ltd. v. Geoscience Res. Recovery, LLC*, 543 S.W.3d 901, 918 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (quoting *Fischer*, 479 S.W.3d at 240) ("A contract for the rendition of services is not rendered unenforceable simply because the compensation is not spelled out. Where the parties have done everything else required to create a binding agreement, "their failure to specify the price does not leave the contract so incomplete that it cannot be enforced" because "it will be presumed that a reasonable price was intended."); *KW Const. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 884 (Tex. App.—Texarkana 2005, pet. denied); *Katy Intern., Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 83 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citations omitted) ("If a contract is not specific enough for the parties to understand their material obligations, it will fail for indefiniteness . . . [h]owever, not every detail must be spelled out in a contract."). This presumption applies because courts favor finding agreements sufficiently definite for enforcement. *Cent. Petroleum Ltd.*, 543 S.W.3d at 918 (quoting *Fischer*, 479 S.W.3d at 240).

Second, reviewing the evidence before the Court and the language of the Agreements, it is clear the parties reached a meeting of the minds concerning Disman's compensation. "To determine whether both parties have assented to the terms of a contract, a court must rely on objective standards." *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App.—Amarillo 2000, no pet.) (citations omitted). "Express language is not essential to a promise; conduct may convey an objective assent." *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (citing *City of Hous. v. First City*,

827 S.W.2d 462, 473 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Smith v. Renz*, 840 S.W.2d 702, 705 (Tex. App.—Corpus Christi 1992, writ denied) ("course of dealings between Renz and Smith showed that their minds had met on the terms of the employment contract."); *Katy Intern.*, 451 S.W.3d at 84 ("The determination of a meeting of the minds is based on an objective standard of what the parties said and did rather than on their subjective state of mind.").

Thoroughbred hired Disman in 2014. During his employment—in 2014, 2015, and 2018—Disman signed the Agreements. In each agreement, the parties agreed to compensate Disman, but did not specify Disman's exact compensation. Despite this imprecision, Disman continued to work for Thoroughbred and accepted compensation throughout his employment. In fact, at this point in the lawsuit, there is no indication that either party ever disputed the amount of Disman's compensation during his employment. It is only now, years after Disman began his employment with Thoroughbred, and after Thoroughbred accused Disman of wrongfully soliciting its investors and misappropriating its trade secrets, that Disman seeks to allege the parties never reached a meeting of the minds as to the compensation he received, without question or dispute, for four years. As the Agreements and the evidence before the Court indicate that the parties reached a meeting of the minds as to Disman's compensation, the Court will not allow Disman to create indefiniteness where there is none in order to avoid the Agreements. As a result, the Court will not dismiss Thoroughbred's breach of contract claim.

## B. Exclusivity

Disman next argues that Thoroughbred fails to sufficiently allege that Disman breached the exclusivity clause of the 2015 and 2018 agreements. The exclusivity clauses state:

> Employment. Employee is hired for the position of . . . . The Parties understand and agree that Employee is employed exclusively Employer and that Employee will be assigned to provide services to the Employer on behalf of the Employer and

> that the Employee is solely and exclusively under the control and supervision of the Employer. Employee shall perform the duties assigned in a reasonable, timely and professional manner and shall comply with this Agreement and all applicable policies and rules instituted by the Employer.

(Dkt. #39-1 at p. 2; Dkt. #39-2 at p. 2). Reviewing Thoroughbred's pleadings, and the arguments provided in the motion, response, and reply, the Court finds Thoroughbred states plausibility states a claim for breach of the exclusivity clauses sufficient to defeat a Rule 12(b)(6) motion.

## II. Personal Relationships and Knowledge

Disman moves to dismiss Thoroughbred's breach of contract, Defend Trade Secrets Act ("DTSA"), and Texas Uniform Trade Secrets Act ("TUTSA") claims contending Thoroughbred may not use these claims to restrict Disman's right to continue using the personal relationships he developed while working for Thoroughbred (Dkt. #46 at pp. 8–12).

Disman mischaracterizes Thoroughbred's complaint. Thoroughbred is not simply attempting to prevent Disman from utilizing the relationships he developed during his employment. Instead, Thoroughbred alleges Disman misappropriated its "financial, business, scientific, technical, economic *and* engineering information" trade secrets related to Thoroughbred's business including, but not limited to, "investment history, risk tolerance, and historical investments of the Thoroughbred investors" as well as "compilations of client information." (Dkt. #39 ¶¶ 56–57, 92–93) (emphasis in original). Even if Thoroughbred only alleged that Disman misappropriated its customers' identities—which seems to be the crux of Disman's argument—Thoroughbred's pleadings would not necessarily fail to state a claim. *See Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003) (a customer list may be a trade secret). Consequently, the Court will not dismiss Thoroughbred's breach of contract, DTSA, and TUTSA claims pursuant to Disman's arguments.

9

## III. Conspiracy

Disman next argues the Court should dismiss Thoroughbred's conspiracy claim arguing conspiracy cannot be based on a breach of contract. (Dkt. #46 at pp. 12–13) (quoting *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003)) ("[A] conspiracy to breach a contract is not actionable under Texas law."). However, Thoroughbred's conspiracy claim is premised on Disman's alleged misappropriation of trade secrets, not on its breach of contract claim (Dkt. #39 ¶¶ 103–111). The parties do not cite, and the Court did not find, any caselaw supporting the proposition that a conspiracy claim cannot be premised on the theft of trade secrets. *See Mandel v. Thrasher (In re Mandel)*, 578 F. App'x. 376, 388 (5th Cir. 2014) ("As we do not reverse the conclusions of fraud and misappropriation [of trade secrets], we affirm the bankruptcy court's judgment regarding the count of conspiracy."). Accordingly, the Court will not dismiss Thoroughbred's conspiracy cause of action for failure to state a claim.

## IV. Preemption

Disman contends that Thoroughbred's newly added breach of fiduciary duty claim is preempted by the TUTSA (Dkt. #46 at pp. 13–14). Thoroughbred responds that because its breach of fiduciary duty claim is not solely based on the misappropriation of its trade secrets, its claim is not preempted (Dkt. #52 at pp. 11–12). At least one court has found that the TUTSA preempts a claim for breach of fiduciary duty when the claim is based on the improper taking of confidential business information. *See Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018). Nonetheless, based on Thoroughbred's argument, dismissal of Thoroughbred's breach of fiduciary duty claim at this time is premature, as it is not entirely clear that the TUTSA will preempt Thoroughbred's claim (*See* Dkt. #39 ¶¶ 113–14).

## V. Repleading

Finally, Disman requests the Court order Thoroughbred to replead "its vague descriptions of the alleged trade secrets." (Dkt. #46 at pp. 14–15). Reviewing Thoroughbred's Amended Complaint, the Court finds Thoroughbred sufficiently pleaded its trade secrets to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. Thoroughbred specifies the types of trade secrets Disman allegedly misappropriated and specifically states where some of these trade secrets can be found in Disman's possession. To the extent Disman seeks additional clarification of the allegedly misappropriated trade secrets, he should request it through discovery.

## CONCLUSION

It is therefore **ORDERED** that Disman's Rule 12 Motion to Dismiss and for More Definite Statement (Dkt. #46) and the D'Addario Defendants' Rule 12 Motion to Dismiss and for More Definite Statement (Dkt. #47) are hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 25th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE