# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| THOROUGHBRED VENTURES, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00318 |
| | § | Judge Mazzant |
| MICHAEL DEXTER DISMAN, CHRIS | § | |
| D'ADDARIO, NAOMI D'ADDARIO, and | § | |
| NM EXPLORATIONS, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Thoroughbred Ventures, LLC's ("Thoroughbred") Motion for Partial Summary Judgment (Dkt. #87). Having reviewed the motion and relevant pleadings, the Court finds the Motion for Partial Summary Judgment should be granted in part and denied in part.

## BACKGROUND

Thoroughbred is an investment business that aggregates money from investors to fund investments in oil and natural gas production as well as real estate. In December 2015, Plaintiff hired Defendant Michael Disman as a salesman in its investment business. Defendant signed an Employment and Confidentiality Agreement in 2014, and again signed substantially similar agreements in 2015 and 2018 (collectively, "the Agreements") with Plaintiff in which he agreed to devote his exclusive and sole efforts to Plaintiff's business and, if terminated, immediately return all confidential information and trade secrets in his possession to Plaintiff. In March 2015, Plaintiff promoted Defendant to a "manager/partner."

During Defendant's employment with Plaintiff, Trent Davis—Thoroughbred's principal—personally purchased a laptop computer for Defendant to use as a Thoroughbred employee.

Defendant used the laptop while engaged in Plaintiff's business, and the laptop allegedly contains Plaintiff's confidential information and trade secrets.

Plaintiff claims that during Defendant's employment, without the knowledge and consent of Plaintiff, Defendant solicited more than $2.3 million from Plaintiff's investors for a real-estate deal. Plaintiff alleges Defendant orchestrated this deal with the help of Chris and Naomi D'Addario (the "D'Addario Defendants") and one or more of Defendant's companies—including 547 Land Development. Due to this conduct, Plaintiff terminated Defendant. However, Defendant did not return the laptop containing Plaintiff's confidential information and trade secrets to Plaintiff.

Plaintiff filed this suit against Disman and the D'Addario Defendants on April 30, 2018 (Dkt. #1). On June 28, 2018, Plaintiff filed its Amended Complaint alleging, among others, breach of contract and breach of fiduciary duty claims (Dkt. #39). On February 4, 2019, Plaintiff filed the current Motion for Partial Summary Judgment seeking summary judgment on its breach of contract and fiduciary duty claims against Defendant Michael Disman (Dkt. #87). A response to the motion was due on February 25, 2019. *See* E.D. TEX. CIV. R. 7(e). Defendant Disman did not file a response to the motion. Because Defendant did not file a response to the motion, the Court presumes that Defendant does not controvert the facts set out by Plaintiff and has no evidence to offer in opposition to the motion. E.D. TEX. CIV. R. 7(d). ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper

under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this

burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiff alleges that there is no genuine issue of material fact to dispute that Defendant breached the Employment and Confidentiality Agreement and his fiduciary duties to Plaintiff. Therefore, Plaintiff moves for partial summary judgment on its breach of contract and breach of fiduciary duty claims (Dkt. #87).

### I. Breach of Contract

Reviewing the pleadings and evidence provided, there is no genuine issue of material fact regarding Plaintiff's breach of contract claim. "In Texas, the elements of a claim for breach of a contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach." *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016) (quoting *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014)). Plaintiff maintains the evidence before the Court entitles Plaintiff to summary judgment on its breach of contract claim as a matter of law.

#### A. There was a Valid, Enforceable Contract Between Plaintiff and Defendant

When Plaintiff hired Defendant around December 1, 2014, he signed an Employment and Confidentiality Agreement with Plaintiff (Dkt. #39-17, Exhibit 38). In a second Employment and

Confidentiality Agreement, signed by Defendant on March 22, 2015, Plaintiff promoted Defendant to a "manager/partner." (Dkt. #39-1, Exhibit 1). Each of these Agreements guaranteed that Defendant was solely and exclusively under the control and supervision of Plaintiff and was not permitted to engage in any other employment, occupation, or consulting activity (Dkt. #39-17, Exhibit 38 at p. 2, § 1.2; Dkt. #39-1, Exhibit 1 at p. 2, § 2; Dkt. #39-2, Exhibit 2). Defendant signed and renewed his Employment and Confidentiality Agreement with Plaintiff in February 2018 (Dkt. #39-2, Exhibit 2). Consequently, there is a valid and enforceable agreement between Plaintiff and Defendant.[1]

### B. Plaintiff Performed Under the Employment and Confidentiality Agreement

The 2015 Agreement required Plaintiff to compensate Defendant and provide Defendant with access to Confidential Information and Trade Secrets (Dkt. #39-1, Exhibit 1 at p. 2, § 2; p. 3 § 6 (ii)). Plaintiff performed under the contract by providing Defendant access to all of Plaintiff's client files, prospective deals, offerings, and contracts (Dkt. #3-1 ¶ 7). Additionally, Plaintiff furnished Defendant with an HP Laptop and a desktop computer, both of which provided access to all of the files and information on Plaintiff's network (Dkt. #3-1 ¶¶ 8–9, Dkt. #39 ¶ 28). Plaintiff also paid Defendant over $800,000.00 based on the revenue he generated for the company and in 2015, 2016, and 2017, Plaintiff also paid Defendant over $1.6 million in compensation (Dkt. #87 at p. 10; Dkt. #3-1 ¶ 10). Accordingly, there is no genuine issue of material fact concerning whether Plaintiff performed under the contract.

### C. Defendant Breached the Employment and Confidentiality Agreement

The 2015 Employment and Confidentiality Agreement expressly required Defendant to return all Confidential Information and Trade Secrets in his possession at the time his employment

---

[1] The Court previously found that the parties reached a meeting of the minds as to Defendant's compensation, even though the 2015 and 2018 Agreements do not specify compensation (Dkt. #95 at p. 7).

5

terminated and use Plaintiff's confidential information and trade secrets exclusively to further Plaintiff's business (Dkt. #39-1, Exhibit 1 ¶¶ 1, 2, 6; Dkt. #39-2, Exhibit 2 ¶¶ 1, 2; Dkt. #39-17, Exhibit 38 ¶ 1). The Agreement also prohibited Defendant from seeking employment outside of his employment with Thoroughbred and soliciting Plaintiff's investors for investment opportunities unrelated to his work with Plaintiff (Dkt. #39-1, Exhibit 1 ¶ 2).

### i. Defendant Solicited and Called Plaintiff's Investors for Non-Plaintiff Investment Opportunities

The 2015 Agreement ensured that Defendant would "not at any time, whether during or subsequent to the termination of [his] employment with [Plaintiff] . . . in any fashion, form or manner, either directly or indirectly, use or divulge, disclose, or communicate to any Person, in any manner whatsoever, any of the Confidential Information and Trade Secrets." (Dkt. #39-1, Exhibit 1 § 6(v)). Defendant was given access to Plaintiff's client list solely based on, and pursuant to, his duties and responsibilities during his employment with Plaintiff (Dkt. #39 ¶ 33). The 2015 Agreement provided a broad definition of "Trade Secret:" "Employer's information, including . . . performance history of oil and gas investment programs or list of actual or potential customers, Clients, investors, or suppliers service providers." (Dkt. #39-1, Exhibit 1 § 1).

While employed by Plaintiff, Defendant breached his Employment and Confidentiality Agreement by targeting and misappropriating Plaintiff's confidential client list of investors for use in Defendant's real estate company, 547 Land Development (Dkt. #39 ¶ 81). As evidence of Defendant's solicitation, Plaintiff provides, among other evidence, an email sent by one of the D'Addario Defendants to Defendant outlining wiring instructions for investors to send funds to support the wrongful investment proposal (Dkt. #39-3, Exhibit 3 ¶¶ 22, 32).

The investors solicited by Defendant were Covered Persons in connection with a Restricted Product, in violation of Sections 6 and 7 of the 2015 Agreement (Dkt. #39-1, Exhibit 1§ 7 (i)).

Defendant solicited these investors for his own real estate venture while employed by Plaintiff as a managing partner. Consequently, Defendant breached his 2015 Agreement with Plaintiff by establishing 547 Land Development while employed by Plaintiff and soliciting Plaintiff's investors while working to further this business.

### D. Plaintiff Sustained Damages as a Result of Defendant's Breach of Contract

Defendant's breach of contract caused immediate and irreparable injury to Plaintiff and damaged Plaintiff's business relationships with its partners (Dkt. #39 ¶ 83). For example, Defendant brought three investors to the table, who earned 547 Land Development approximately $2.3 million—money not otherwise invested in Plaintiff's oil and gas investments (Dkt. #39 ¶ 52).

Although Plaintiff proves that it was harmed by Defendant's breach, Plaintiff does not specify the amount of damages it seeks in its motion (Dkt. #87 at pp. 16–17). For example, Plaintiff shows that the 2015 Agreement contained a liquidation clause that provides $25,000.00 to Plaintiff for each of the three investors solicited by Defendant, totaling $75,000.00 (Dkt. #39-1, Exhibit 1, § 9 (ii)). However, Plaintiff seeks "(a) injunctive relief; (b) actual damages; (c) exemplary damages; (d) prejudgment and post judgment interests; (e) costs; (f) attorney's fees; (g) and such other relief, both at law and in equity, as the Court deems just and right given the nature of Defendant's actions" in its Amended Complaint (Dkt. #39 at p. 29). In its Motion for Summary Judgment, Plaintiff only alleges liquidated damages and "prays for all other relief to which it may be entitled, whether at law or in equity." (Dkt. #87 at p. 15). Therefore, while Plaintiff proves it has been damaged and that it is entitled to the liquidated damages specified in the Agreements, Plaintiff does not prove or request a specific amount of damages. As a genuine issue of material fact exists on the damages Plaintiff is entitled to, the Court cannot enter summary judgment on this element of Plaintiff's breach of contract claim.

Overall, the evidence demonstrates that as a matter of law (1) there was a valid, enforceable contract between Plaintiff and Defendant; (2) Plaintiff performed under the contract; (3) Defendant breached the contract; and (4) Plaintiff sustained some amount of damages because of Defendant's breach of contract. Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claim but a genuine issue of material fact remains as to damages.

## II.  Breach of Fiduciary Duty

Plaintiff moves for partial summary judgment on its breach of fiduciary duty claim. To succeed on a breach of fiduciary duty claim, there must be "'(1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or a benefit to the defendant as a result of the breach.'" *Jones v. Wells Fargo Bank, N.A.*, 858 F.3d 927, 933 (5th Cir. 2017) (quoting *Cluck v. Mecom*, 401 S.W.3d 110, 114 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). Because there is no genuine issue of material fact regarding Plaintiff's claim for breach of fiduciary duty, Plaintiff is entitled to summary judgment as a matter of law on its breach of fiduciary duty claim.

### A.  There was a Fiduciary Relationship Between Plaintiff and Defendant

As a manager and partner of Plaintiff, Defendant had a fiduciary relationship with Plaintiff. "Employees are not fiduciaries of their employers simply by virtue of the employment relationship," however, "employees do owe certain limited fiduciary duties to not compete with their employers." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002)). Generally, employees "may not appropriate [their] employer's trade secrets[,] . . . solicit [their] employer's customers while still working for his employer, . . . [or] carry away certain information, such as lists of

8

customers." *Id.* (quoting *Johnson*, 73 S.W.3d at 202). As a manager and partner of Plaintiff, Defendant's fiduciary duties included:

> (a) to act with the utmost good faith and loyalty in his relations with Thoroughbred, (b) to fully disclose personal interests, (c) to use uncorrupted business judgment for the sole benefit of Thoroughbred, (d) to not usurp business opportunities, (e) to not use Thoroughbred's assets for personal gain, (f) to not appropriate Thoroughbred's trade secrets, (g) to not solicit Thoroughbred's customers while still working for Thoroughbred, and (h) to not act for his own personal interest, at the expense of Thoroughbred, by a course of conduct designed to hurt Thoroughbred, by a course of conduct designed to hurt Thoroughbred by a course of conduct designed to hurt Thoroughbred.

(Dkt. #39 ¶ 113). Therefore, Defendant had a fiduciary relationship with Plaintiff.

### B. Defendant Breached his Fiduciary Duty to Plaintiff

Defendant did not execute his responsibilities as Plaintiff's manager and partner with good faith, loyalty, and business judgment (Dkt. #39 ¶ 114). Instead, as discussed above, the evidence demonstrates that Defendant diverted Plaintiff's investors to 547 Land Development (Dkt. #87 at p. 14). As a result, Defendant breached his fiduciary duty to Plaintiff by soliciting investors from Plaintiff.

### C. Defendant's Breach of Fiduciary Duty Resulted in Injury to Plaintiff

Defendant's breach of fiduciary duty caused immediate and irreparable injury to Plaintiff and has damaged Plaintiff's business relationships with its partners. Notably, the money and investments from each of Plaintiff's investors that Defendant solicited illustrate potential investments and opportunities taken from Plaintiff (Dkt. #87 at p. 14). Further, the evidence previously cited in the breach of contract section establishes that Defendant's breach of fiduciary duties injured Plaintiff and benefited Defendant by diverting investment opportunities from Plaintiff to Defendant's personal business (Dkt. #39 ¶ 115). As in its breach of contract claim,

Plaintiff demonstrates Defendant's breach of fiduciary duty caused some amount of harm, but does not prove the specific damages it is entitled to. Therefore, although Plaintiff demonstrates it is entitled to the liquidated damages specified in the Agreements, the Court cannot enter summary judgment for specific damages at this time.

Plaintiff proves (1) there was a fiduciary relationship between Plaintiff and Defendant; (2) a breach by Defendant of his fiduciary duty to Plaintiff; and (3) an injury of some amount to Plaintiff or a benefit to Defendant because of the breach. Accordingly, the evidence demonstrates that Plaintiff is entitled to summary judgment on its breach of fiduciary duty claim expect as to the element of damages.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. #87) is hereby **GRANTED IN PART** and **DENIED IN PART** as to all elements of its breach of contract and fiduciary duty claims, except damages.

**IT IS SO ORDERED.**
SIGNED this 28th day of June, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE